UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUDIN, RODRIGUEZ-RAMIREZ (A# 245-183-195)<br>*Petitioner*,<br><br>-v-<br>RAUL MALDONADO, JR., in his official capacity as Warden of the Metropolitan Detention Center<br>WILLIAM JOYCE, in his official capacity as Acting Field Office Director of New York, Immigration and Customs Enforcement<br>TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement;<br>KRISTI NOEM, Secretary, U.S. Department of Homeland Security;<br>PAMELA BONDI, Attorney General of the United States<br><br>*Respondents*. | Case No. 1:26-cv-891 |

**PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241 AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1. This is a petition for a writ of habeas corpus under 28 U.S.C. § 2241 and a complaint for declaratory and injunctive relief on behalf of petitioner LUDIN, RODRIGUEZ-RAMIREZ ("Petitioner"), a 28-year-old asylum seeker from Guatemala

1

    who is currently in the custody of U.S. Immigration and Customs Enforcement ("ICE") within the Eastern District of New York.

2. His detention rests on a newly adopted and fundamentally erroneous interpretation of the Immigration and Nationality Act ("INA") under which the Department of Homeland Security ("DHS") and the Executive Office for Immigration Review ("EOIR") have begun treating all noncitizens who entered without inspection at any time in the past as subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). Under this reinterpretation, such individuals are categorically barred from release on bond and immigration judges lack jurisdiction to review custody. The Board of Immigration Appeals ("BIA") endorsed this reinterpretation in *Matter of Q. Li*, 29 I. & N. Dec. 66 (BIA 2025), and *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

3. Petitioner is charged with entering the United States without inspection under 8 U.S.C. § 1182(a)(6)(A)(i). For decades, individuals in Petitioner's circumstances have been detained under 8 U.S.C. § 1226(a), which authorizes release on bond and provides for custody redetermination by an immigration judge. Conversely, section 1225(b)(2)(A) applies only to individuals encountered at the border and undergoing contemporaneous inspection. The Supreme Court has consistently described § 1225 as governing inspection and detention "at the Nation's borders and ports of entry," not long-settled residents apprehended in the interior. *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

4. More than 300 federal district courts across the country, including within this District, have rejected DHS's new interpretation as contrary to the plain language and structure of the INA, the statute's legislative history, and three decades of consistent agency practice.

5. Petitioner seeks a writ of habeas corpus requiring his immediate release, or in the alternative, requiring Respondents to provide a custody redetermination hearing under § 1226(a) within seven days.

6. Petitioner entered the United States on or about September 5, 2023, by entering without inspection at the United States/Mexico border. He was apprehended shortly after entry and then released by the DHS the next day.

7. Petitioner applied for asylum, withholding of removal, and protection under the Convention Against Torture by filing Form I-589 within the required one-year deadline and subsequently received employment authorization. On November 19, 2024, the Immigration Court dismissed his removal proceedings, which at the time had been consolidated with those of his spouse and minor daughter, pursuant to a joint motion filed by both his counsel and counsel for the Department of Homeland Security.

8. On February 04, 2026, when Petitioner was driving to his workplace, he was stopped by ICE agents and subsequently arrested. He was given no meaningful opportunity to contest his re-detention before he was detained. This is despite being permitted by Respondents to live at liberty in the interior of the United States for over two years, complying with all of DHS's requirements, and developing significant ties to the United States, and, therefore, a constitutionally protected liberty interest.

9. He is the sole breadwinner of his family. His spouse, Ms. Berlin Solis Perez, is seven and a half months pregnant and has experienced complications during her pregnancy. Her doctors have advised that she will likely need to undergo a cesarean section to deliver the baby. He is also the father of his five-year-old daughter, Ivania, who depends on him both

financially and emotionally.

10. His detention is unlawful.

## JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction over this habeas petition pursuant to 28 U.S.C. § 2241, 28 U.S.C. § 1331, and the Suspension Clause, U.S. Const. art. I, § 9, cl. 2. Petitioner challenges the legality of his detention.

13. Sections 1252(g) and 1252(b)(9) of Title 8 do not strip this Court of jurisdiction over Petitioner's claims, which are independent of and collateral to any challenge to his removal proceedings. As numerous recent decisions have held, claims challenging immigration detention, parole termination, and the procedures used to revoke release do not "arise from" decisions to commence, adjudicate, or execute removal and therefore remain within district court jurisdiction.

14. This Court also has authority to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201-2202.

15. Venue lies in this District under 28 U.S.C. § 1391(e) and 28 U.S.C. § 2241 because Petitioner is detained within this District. At the time of filing, Petitioner remains at BROOKLYN MDC located at 80 29th Street, Brooklyn, NY 11232. *See* Ex. A, ICE Detainee Locator Information.

## PARTIES

16. Petitioner, LUDIN, RODRIGUEZ-RAMIREZ, is a citizen and national of Guatemala,

4

and an asylum seeker who suffered past persecution and fears future persecution and torture if returned to his country. He has lived in the United States since at least September 2023.

12. Respondent RAUL MALDONADO, JR is the warden of the Metropolitan Detention Center where Petitioner is currently detained. He is the immediate custodian of Petitioner and is therefore a proper respondent in this habeas action.

17. Respondent WILLIAM JOYCE is the New York Field Office Director for ICE's Enforcement and Removal Operations (ERO). He has custody over Petitioner and is a proper respondent in this habeas action.

18. Respondent Todd M. Lyons is the Acting Director of ICE and is responsible for the administration and oversight of immigration detention and enforcement nationwide.

19. Respondent Kristi Noem is the Secretary of the U.S. Department of Homeland Security (DHS) and has ultimate responsibility for enforcement of the immigration laws and administration of ICE and CBP.

20. Respondent Pamela Bondi is the Attorney General of the United States. She is responsible for the Department of Justice, of which the Executive Office for Immigration Review and the immigration court system it operates is a component agency.

21. All respondents are sued in their official capacities.

**EXHAUSTION AND RIPENESS**

22. There is no statutory exhaustion requirement applicable to habeas challenges to

5

immigration detention under 28 U.S.C. § 2241, and any attempt to exhaust administrative remedies would be futile. Petitioner has not been given any process at all to challenge his sudden redetention.

23. Further, Respondent's mandatory detention policy challenged here forecloses immigration judges from reviewing custody determinations for entrants without inspection. Seeking relief before the agency would be futile. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

## LEGAL FRAMEWORK

24. The INA prescribes three basic forms of detention for the vast majority of noncitizens in removal proceedings.

25. The first is 8 U.S.C. § 1226, which governs the detention of individuals who are already physically present in the United States and are placed into standard removal proceedings before an immigration judge under 8 U.S.C. § 1229a. Section 1226(a) authorizes arrest and detention and expressly permits release on bond or conditional parole unless the individual is subject to mandatory detention under § 1226(c), which applies only to those arrested, charged with, or convicted of certain enumerated offenses.

26. The second detention framework is found in 8 U.S.C. § 1225(b), which governs the detention of individuals who are apprehended at or near the border and are seeking admission to the United States. Section 1225 provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained." Individuals detained under § 1225(b) are subject to mandatory

6

detention pending the outcome of their proceedings.

27. Last, the INA also provides for detention of noncitizens who have been ordered removed, including individuals in withholding-only proceedings, *see* 8 U.S.C. § 1231(a)–(b).

28. This case concerns the detention provisions at §§ 1226(a) and 1225(b)(2).

29. The detention provisions at § 1226(a) and § 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996, Pub. L. No. 104–208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Section 1226(a) was most recently amended earlier this year by the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025).

30. Following the enactment of the IIRIRA, EOIR drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under § 1225 and that they were instead detained under § 1226(a). *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

31. For nearly three decades following those regulations, DHS, EOIR, and federal courts uniformly applied § 1226(a) to noncitizens who entered without inspection and were later apprehended in the interior of the United States. Individuals in this category routinely received bond hearings before immigration judges because their detention arises from interior enforcement under § 1226(a), not from border inspection under § 1225(b). This uniform practice reflects the INA's structure and the distinction Congress drew between individuals seeking admission and those who have long since entered the United States. Nothing in the statutory text, legislative history, administrative interpretation, or case law suggested that individuals in Petitioner's circumstances were to be treated as mandatory

detainees under § 1225(b)(2)(A).

32. In July 2025, however, DHS abruptly adopted a new interpretation. ICE issued "Interim Guidance Regarding Detention Authority for Applicants for Admission," asserting that any individual who is present in the United States without admission—regardless of residence, circumstances of arrest, or time since entry—is subject to mandatory detention under § 1225(b)(2)(A). This interpretation effectively eliminates the statutory distinction between § 1225 and § 1226 and asserts that immigration judges lack authority to hear custody redetermination requests from anyone who entered the country unlawfully, without inspection. The policy applies regardless of when a person is apprehended, and affects those who have resided in the United States for months, years, and even decades.

33. ICE's policy is supported by two decisions issued by the Board of Immigration Appeals, *Matter of Q. Li*, 29 I. & N. Dec. 66 (BIA 2025), and *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). In *Q. Li*, the BIA held that an "applicant for admission who is arrested and detained without a warrant while arriving in the United States," and later placed into removal proceedings is subject to mandatory detention under 8 U.S.C. § 1225(b). 29 I. & N. Dec. at 69. In *Yajure Hurtado,* the Board expanded its holding in *Q. Li* to require mandatory detention for all noncitizens who are present in the United States without admission, regardless of manner of entry. 29 I. & N. Dec. at 216.

34. With these decisions the BIA stripped immigration courts of the authority to hold bond hearings for any noncitizen who is present in the United States without having been admitted or paroled, subjecting these individuals to mandatory detention under § 1225(b)(2)(A).

35. Since Respondents adopted their new policies, dozens of federal courts have rejected

8

their new interpretation of the INA's detention authorities. Courts have likewise rejected *Matter of Yajure Hurtado* and *Matter of Q. Li*, which adopt the same reading of the statute as ICE.

36. Subsequently, courts of this District and around the country have rejected this reinterpretation as contrary to the INA. These courts have concluded that § 1225(b)(2)(A) does not apply to individuals like Petitioner, who entered the United States long ago and were apprehended in the interior. *See, e.g.*, *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025); *Diaz Martinez v. Hyde*, No. CV 25-11613-BEM, --- F. Supp. 3d ----, 2025 WL 2084238 (D. Mass. July 24, 2025); *Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted*, No. CV-25-02157-PHX-DLR (CDB), 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Maldonado v. Olson*, No. 0:25-cv-03142-SRN-SGE, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW (DFM), 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Romero v. Hyde*, No. 25-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Samb v. Joyce*, No. 25 CIV. 6373 (DEH), 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025); *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025); *Leal-Hernandez v. Noem*, No. 1:25-cv-02428-JRR, 2025 WL 2430025 (D. Md. Aug. 24, 2025); *Kostak v. Trump*, No. 3:25-cv-01093-JE-KDM, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Jose J.O.E. v. Bondi*, No. 25-CV-3051 (ECT/DJF), --- F. Supp. 3d ----, 2025 WL 2466670 (D. Minn. Aug. 27, 2025); *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486-BRM-EAS, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Vasquez Garcia v. Noem*, No. 25-cv-02180-DMS-MM, 2025 WL 2549431 (S.D. Cal. Sept. 3,

2025); *Zaragoza Mosqueda v. Noem*, No. 5:25-CV-02304 CAS (BFM), 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025); *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Sampiao v. Hyde*, No. 1:25-CV-11981-JEK, 2025 WL 2607924 (D. Mass. Sept. 9, 2025); *see also, e.g.*, *Palma Perez v. Berg*, No. 8:25CV494, 2025 WL 2531566, at *2 (D. Neb. Sept. 3, 2025) (noting that "[t]he Court tends to agree" that § 1226(a) and not § 1225(b)(2) authorizes detention); *Jacinto v. Trump*, No. 4:25-cv-03161-JFB-RCC, 2025 WL 2402271 at *3 (D. Neb. Aug. 19, 2025) (same); *Anicasio v. Kramer*, No. 4:25-cv-03158-JFB-RCC, 2025 WL 2374224 at *2 (D. Neb. Aug. 14, 2025) (same).

37. Courts have uniformly rejected DHS's and EOIR's new interpretation because it defies the INA. As this court held in *R.A.R.R. v. Almodovar et al., No. 25-CV-6597 (PKC) (E.D.N.Y. Dec. 19, 2025) (Oral Ruling and Docket Order)*, and countless others have explained, the plain text of the statutory provisions demonstrates that § 1226(a), not § 1225(b), applies to people like Petitioner. As this Court in R.A.R.R. and a chorus of district courts have held, a non-citizen who is already in the country pending the outcome of removal proceedings is not "seeking admission," and therefore is not subject to Section 1225(b)(2)(A)'s mandatory detention. *See R.A.R.R.*, No. 25-CV-6597 (PKC) (E.D.N.Y. Dec. 19, 2025) (Oral Ruling and Docket Order); *Barco Mercado v. Francis*, No. 25-CV-6582 (LAK), 2025 WL 3295903, at *5–10 (S.D.N.Y. Nov. 26, 2025) (citing Jennings v. Rodriguez, 583 U.S. 281, 289 (2018)) (similarly deriving this conclusion from the "text, structure, and history" of Sections 1225 and 1226); see also id. at *13–14 (compiling cases)

38. These decisions rest on consistent reasoning grounded in the statutory text, structure, and

the Supreme Court's description of § 1225(b) as a regime governing "arriving aliens" who are stopped at the border and are seeking admission. The Supreme Court has explained that § 1225(b) is designed to govern processing "at the Nation's borders and ports of entry." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). This statutory framework presupposes a contemporaneous inspection at the time the individual seeks admission, which does not apply to individuals residing in the interior who are later apprehended.

39. The statutory structure confirms this interpretation. Section 1225 is titled "Inspection by immigration officers" and repeatedly refers to determinations made by the examining officer at the time an individual seeks admission. *See* 8 U.S.C. § 1225(a)(3), (b)(1)(A), (b)(2)(A). In contrast, § 1226 applies to arrests made "on a warrant issued by the Attorney General" after a person is already present in the United States. Congress thus created two separate detention schemes—one for individuals at the border undergoing contemporaneous inspection, and one for individuals arrested in the interior. Petitioner plainly falls within the latter scheme.

40. Even when noncitizens are subject to mandatory detention under section § 1225, courts in this circuit have routinely held that (a) such individuals have a protected liberty interest in remaining out of custody; (b) revocation of that liberty without basic notice and an opportunity to be heard violates procedural due process; and (c) § 1225(b) does not authorize such redetention or strip them of due process protections. *See Munoz Materano v. Arteta*, No. 25 CIV. 6137 (ER), 2025 WL 2630826, at *13 (S.D.N.Y. Sept. 12, 2025) (citing *Kelly*, 2025 WL 2381591, at *4) ("Even if, arguendo, ICE had the 'statutory, discretionary authority' to detain Munoz Materano pursuant to § 1225, the question is

whether, in exercising that authority, ICE is required to adhere to the basic principles of due process. There is no dispute that it is."); *Kelly*, 2025 WL 2381591, at *3-4 (internal citation and quotations removed and cleaned up) ("In light of the undisputed facts, there is no doubt that Respondents' ongoing detention with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to respond, violates his due process rights.")

41. Consequently, the new DHS and EOIR interpretation collapses the statutory distinction between border processing and interior arrest, undermines the express structure Congress enacted, and unlawfully eliminates bond hearings for a broad class of individuals whom Congress intended to be eligible for individualized custody determinations.

**FACTUAL ALLEGATIONS**

42. Petitioner entered the United States on or about September 5, 2023, by entering without inspection at the United States/Mexico border. He was apprehended shortly after entry

    and then released by the DHS. Upon information and belief.

43. Petitioner applied for asylum, withholding of removal, and protection under the Convention Against Torture by filing Form I-589 within the required one-year deadline and subsequently received employment authorization. On November 19, 2024, the Immigration Court dismissed his removal proceedings, which at the time had been consolidated with those of his spouse and minor daughter, pursuant to a joint motion filed by both his counsel and counsel for the Department of Homeland Security.

12

44. On February 04, 2026, when Petitioner was driving to his workplace, he was stopped by ICE agents and subsequently arrested. He was given no meaningful opportunity to contest his re-detention before he was detained. This is despite being permitted by Respondents to live at liberty in the interior of the United States for over two years, complying with all of DHS's requirements, and developing significant ties to the United States, and, therefore, a constitutionally protected liberty interest.

45. He is the sole breadwinner of his family. His spouse, Ms. Berlin Solis Perez, is seven and a half months pregnant and has experienced complications during her pregnancy. Her doctors have advised that she will likely need to undergo a cesarean section to deliver the baby. He is also the father of his five-year-old daughter, Ivania, who depends on him both financially and emotionally.

## CLAIMS FOR RELIEF

## COUNT I
### Violation of the INA

46. Petitioner incorporates all preceding paragraphs.

47. The application of 8 U.S.C. § 1225(b)(2)(A) to Petitioner is contrary to the text, structure, and purpose of the INA.

48. Petitioner is not an "arriving alien" encountered at or near the border who is seeking admission at the time of inspection. She is a noncitizen who has resided in the interior of the United States for more than three years.

49. Under longstanding agency practice and consistent judicial interpretation, individuals in these circumstances are detained under § 1226(a). Respondents' application of §

1225(b)(2)(A) to Petitioner is therefore unlawful, and his continued detention without access to a bond hearing violates the INA.

## COUNT II

### Violation of the Bond Regulations

50. Petitioner incorporates all preceding paragraphs.

51. The regulations governing immigration detention, promulgated following the 1996 amendments to the INA, expressly provide for bond eligibility and bond redetermination for individuals who entered without inspection. These regulations were binding when issued and remain binding today. Respondents' reliance on *Matter of Q. Li* and *Matter of Yajure Hurtado* to override these regulations is unlawful.

52. Respondents' application of § 1225(b)(2)(A) to Petitioner directly contradicts the regulatory scheme codified at 8 C.F.R. §§ 236.1, 1236.1, and 1003.19, each of which presupposes the availability of custody redetermination for individuals detained under § 1226(a). Respondents' refusal to afford Petitioner a bond hearing therefore violates the governing regulations.

## COUNT III

### Violation of Due Process

53. Petitioner incorporates the foregoing paragraphs by reference.

54. Petitioner has a protected liberty interest in remaining at liberty after his initial release more than two years ago. ICE's initially decision to release his reflected a determination that she could safely live in the community while his case proceeded. The government's decision to release a noncitizen from custody creates an implicit promise that liberty will

14

not be revoked absent failure to comply with conditions or other good cause, and that revocation will be accompanied by fair procedures.

55. The Fifth Amendment requires that before the government deprives a person of this liberty, it must provide at least basic procedural protections, including notice of the reasons for the deprivation and a meaningful opportunity to be heard. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

56. ICE summarily re-detained Petitioner at a traffic stop without a meaningful and individualized opportunity to contest his redetention before or shortly after it occurred.

57. The government's refusal to provide Petitioner with an individualized custody determination, while holding him for a potentially prolonged period, violates substantive and procedural due process. The blanket denial of a bond hearing based on an erroneous statutory interpretation does not comport with the fundamental requirements of fairness and individualized decision making that due process demands.

58. The Second Circuit has likewise held that due process requires a meaningful opportunity for an individualized determination of whether continued civil immigration detention is justified. *Velasco Lopez v. Decker*, 978 F.3d 842, 855–56 (2d Cir. 2020). Petitioner has been afforded no such process here.

59. By detaining Petitioner without notice or a hearing on whether she is a flight risk or a danger to the community, ICE violated Petitioner's procedural due process rights under the Fifth Amendment.

60. The harm to Petitioner is ongoing and irreparable. She remains detained, separated from her community and counsel, and unable to effectively pursue his asylum case while in

15

custody.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

A. Assume jurisdiction over this matter;

B. Expedite consideration of this Petition under 28 U.S.C § 1657 ("the court shall expedite the consideration of any action brought under chapter 153", which includes petitions for habeas corpus)

C. Issue a writ of habeas corpus under 28 U.S.C. § 2241 ordering Petitioner's immediate release from ICE custody under appropriate conditions of supervision, and do so promptly as required by 28 U.S.C. § 2243 (mandating a writ or order to show cause be returned within 3 days from filing, or 20 days for good cause shown);

D. Declare that Respondents' re-detention without prior written notice and a meaningful opportunity to be heard violates the Fifth Amendment's Due Process Clause;

E. Enjoin Respondents from transferring Petitioner out of the jurisdiction of this Court during the pendency of these proceedings;

F. Award Petitioner reasonable attorneys' fees and costs under the Equal Access to Justice Act and any other applicable authority; and

G. Grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
February 16, 2026

                                          Respectfully submitted,

                                          <u>/s/ *Parham Zahedi*</u>
                                          Parham Zahedi (NY 5711411)
                                          Z&W Law Office, PLLC
                                          3710 Crescent St. Apt 6c
                                          Long Island City, NY 11101
                                          (706) 308-0835
                                          Parham@zwlawoffice.com
                                          Attorney for Petitioner

**VERIFICATION BY SOMEONE ACTING ON PETITIONERS' BEHALF PURSUANT TO 28 U.S.C. § 2242**

I am submitting this verification on behalf of the Petitioner because I am the attorney for Petitioner. I hereby verify that the statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated: February 16, 2026                    Respectfully submitted,

/s/ *Parham Zahedi*
Parham Zahedi (NY 5711411)
Z&W Law Office, PLLC
3710 Crescent St. Apt 6c
Long Island City, NY 11101
(706) 308-0835
Parham@zwlawoffice.com
Attorney for Petitioner